**FILED**
**Jan 19, 2024**
**12:05 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT COOKEVILLE

| | | |
|---|---|---|
| **JEFFERY EMERSON,** | ) | **Docket No. 2021-04-0282** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 12856-2021** |
| **CITY OF COOKEVILLE,** | ) | |
| **Employer.** | ) | **Judge Brian K. Addington** |

---

## EXPEDITED HEARING ORDER

---

Jeff Emerson worked as firefighter for the City of Cookeville, Tennessee for twenty-four years. During his employment, he developed colorectal cancer and filed a claim for workers' compensation benefits, which Cookeville eventually denied. The question is whether Mr. Emerson's work was the primary cause of his cancer. The Court held a hearing on January 9, 2024, and holds that Mr. Emerson is not likely to prove that his work was the primary cause of his cancer.

### Claim History

As part of his job with Cookeville, Mr. Emerson underwent yearly physicals by Dr. Toney Hudson through its voluntary program. Unfortunately, in November 2021, a colon cancer screen detected cancerous cells, and Mr. Emerson notified Cookeville.

Dr. Hudson referred Mr. Emerson to a gastroenterologist for a colonoscopy, which found cancer. The gastroenterologist referred Mr. Emerson to oncologist Dr. Algis Sidrys, who ordered chemotherapy and radiation, and now Mr. Emerson's cancer is in remission.[1]

After receiving notice, Cookeville offered Mr. Emerson a panel, and he chose Dr. Hudson. Cookeville asked Dr. Hudson for a causation opinion on Mr. Emerson's cancer. Dr. Hudson responded that another oncologist, Dr. Venumada Kotla, would be better suited to give an opinion.

---

[1] Mr. Emerson received this care through his personal health insurance.

1

At Cookeville's request, Dr. Kotla saw Mr. Emerson and gave a causation statement. He wrote: "In my best clinical judgment, it would not be possible to assign a numerical risk of causation of 50% or more given the limitations of available epidemiologic data." He assigned the causative effect of Mr. Emerson's work on his cancer at thirty percent. Cookeville denied Mr. Emerson's claim based on the assessment.

In response, Mr. Emerson asked Dr. Sidrys to address causation. Dr. Sidrys noted:

> Given the lack of other risk factors for Mr. Emerson and given the clear proof that firefighters are at an increased risk of GI cancers, specifically rectal cancers, I do believe that Mr. Emerson's employment as a fireman has *a* significant (greater than 51%) chance of having been a causative agent in his malignancy.

(Emphasis added).

Mr. Emerson testified that he was exposed to toxins from structure, vehicle, and brush fires. He gave approximate monthly numbers for each type of incident. He said that he ate grilled red meat in moderation and drank from twelve to twenty beers a week. He quit smoking fourteen years ago but smoked a pack and a half daily before. He testified that during his employment, he often got soot on his work uniform, was exposed to diesel exhaust fumes, and inhaled smoke from various types of fires. He said that he regularly exercised to stay in shape for his job. He requested medical and temporary benefits for his injury.

Cookeville, through the affidavit of its human resource director, asserted that Dr. Kotla was Mr. Emerson's authorized treating physician, and that it had properly denied his claim after Dr. Kotla gave his opinion.

The parties also obtained expert medical opinions from two other physicians, Dr. Danny Whu (Mr. Emerson), and Dr. Sarkis Chobanian (Cookeville). Both doctors acknowledged that they do not know the cause of Mr. Emerson's cancer but gave their opinion based on risk factors to which they believed his work exposed him.

Dr. Whu is a retired firefighter and physician who serves as the Chief Medical Officer of the International Association of Firefighters. He is an advocate for firefighters across the nation. He prepared a report on Mr. Emerson's cancer and testified by deposition.

In his report, he stated he reviewed literature on the subject, Mr. Emerson's treatment records, and colorectal cancer generally. He found an absence of non-work-related risk factors and pointed out Mr. Emerson's job exposed him to multiple carcinogens. He ended his report by saying "his occupation as a fire fighter resulted in a

2

numerical risk value greater than 51% specific to his development of rectal cancer." He also equated Mr. Emerson's exposure to "easily" greater than 51% and then explained that Tennessee law does not require a preponderance of evidence because the law provides a presumption that his cancer was caused by his work. He also stated that the benefit of the doubt should be found in Mr. Emerson's favor.[2]

Dr. Whu further testified that in his job he advocates for firefighters to receive the benefits they were due and testified before legislative bodies to help accomplish the unions goals. He firmly stated that Mr. Emerson's job was the primary risk that caused his cancer and discounted other risk factors.

Dr. Chobanian is a board-certified gastroenterologist. He has performed over 100,000 colonoscopies in his career. Cookeville paid Dr. Chobanian a significant fee for his time spent on the file and his trial testimony.

He testified in person that more likely Mr. Emerson's colorectal cancer was caused by the adenoma-carcinoma sequence, in which a colon lining cell mutates and becomes more and more abnormal until it becomes cancerous. He excluded genetic causes because pathologists found none during Mr. Emerson's treatment. He noted that Mr. Emerson's colon contained another non-cancerous polyp, which the surgeon removed, different from the cancer in his lower colon—which shows the process had also started in the front of his colon. He acknowledged Mr. Emerson's risk factor as a firefighter and determined that his firefighting duties may have increased his risk of cancer but did not cause it. He also discussed Mr. Emerson's drinking and smoking and pointed out that they were significant risk factors as well.

### Findings of Fact and Conclusions of Law

Mr. Emerson must show that he would likely prevail at a hearing on the merits that his cancer and need for treatment arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. §§ 50-6-239(d)(1), 50-6-102(12) (2023). Specifically, he must show "to a reasonable degree of medical certainty that [the work] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *Id.* at -102(12)(C)-(D).

For his part, Mr. Emerson testified credibly about his employment and exposure to various toxins in the smoke from fires, soot that collected on his gear, and diesel exhaust fumes from the firetruck engines in the firehouse garage. He testified about the

---

[2] Dr. Whu's testimony about presumptions in the workers' compensation law is inaccurate. The Court relies on his report solely as to his *understanding* of Tennessee workers' compensation law.

approximate times he fought structure fires, vehicle fires, and vegetation fires. However, he did not supply *exact* information of this nature for the experts to consider. He also testified about his diet, weight, smoking, and alcohol intake.

For medical causation, both parties relied on experts to support their contentions. All four experts were competent to testify about Mr. Emerson's condition.[3] However, neither Dr. Sidrys or Kotla fully explained how they reached their conclusions, based on the information they received from Mr. Emerson and from medical studies.

Dr. Whu provided helpful insight about firefighting and exposure to toxins. However, he is an advocate for firefighters nationwide, and his testimony can be construed as biased in favor of Mr. Emerson by that very role. He also did not have a correct understanding of the Tennessee Workers' Compensation Law, nor is he qualified to testify as to what the law means. For these reasons, the Court gives little weight to his causation analysis.

Although Cookeville paid Dr. Chobanian well for his opinion, he was unbiased as to his causation analysis. He reviewed each risk factor and testified that some were mitigated, and others were more serious. He reasoned that it is impossible to say for sure what caused Mr. Emerson's cancer but most likely the major cause was the adenoma-carcinoma sequence.

In summary of the experts' causation opinions, Dr. Sidrys stated that Mr. Emerson's job had a significant chance of being "*a*" causative agent of his cancer. (Emphasis added.) He did not say that his job "primarily" caused his cancer but only that it was a main risk, and the opinion contains an impermissible degree of speculation. Dr. Kotla assigned a thirty-percent risk to his job as causing Mr. Emerson's cancer but did not adequately explain how arrived at this numeric value. It too seems speculative. Dr. Whu assigned over fifty-one percent, but as explained above his opinion carries little weight. In contrast, Dr. Chobanian, whom the Court fully accredits, considered the risk factors and assigned them an appropriate weight. He found that Mr. Emerson's job was not the primary risk factor of his cancer.

Under these circumstances, the Court finds that Mr. Emerson's job increased the risk of him getting colorectal cancer, but the **weight** of the evidence does not establish that Mr. Emerson's job was the primary cause. The Court holds he is unlikely to prevail at a

---

[3] Cookeville made two evidentiary objections to Mr. Emerson's medical experts. First, the City moved to exclude Dr. Sidrys's and Dr. Whu's testimony due to speculation. The Court overrules the motion, as both doctors explained that they did not just speculate but evaluated the risk factors for Mr. Emerson's condition. Second, Cookeville moved to exclude Dr. Whu's testimony based on a violation of Tennessee Rules of Civil Procedure 34.02 (2023) and his unauthorized investigation of fire stations. Neither Mr. Emerson nor his attorney asked Dr. Whu to conduct these investigations. Dr. Whu did not obtain permission from Cookeville's attorney to conduct the investigation. The Court grants the motion in part and excludes only his testimony about and pictures of his investigation of the local fire stations.

hearing on the merits in proving that his cancer and the need for treatment arose primarily out of and in the course and scope of his employment.

**IT IS THEREFORE ORDERED** as follows:

1. Mr. Emerson's claim against the City of Cookeville for the requested benefits is denied at this time.

2. The Court sets a Status Hearing on March 19, 2024, at 9:00 a.m. Central. The parties must call **855-543-5044** to participate in the hearing.

**ENTERED January 19, 2024.**

/s/ Brian K. Addington

_____
**JUDGE BRIAN K. ADDINGTON**
**Court of Workers' Compensation Claims**

## APPENDIX

**Exhibits**

1. Mr. Emerson's Affidavits
2. Wage Statement
3. Physician Panel
4. Notice of Denial
5. Transcribed Statement of Mr. Emerson
6. Job Description
7. Employment records
8. Carl Sells's affidavit
9. Medical Bills
10. Stipulated Medical Records
11. Dr. Sidrys's deposition
12. Dr. Kotla's deposition
13. Stipulated transcript of the previous expedited hearing
14. Dr. Whu's deposition volume 1
15. Dr. Whu's deposition volume 2
16. CV Dr. Chobanian
17. Dr. Chobanian's causation report
18. Tobacco Use and Colon Cancer abstract.

**Technical Record**

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Transfer Order
4. Hearing Request
5. Motion for Scheduling Order Prior to Expedited Hearing
6. Order Setting Expedited Hearing
7. Employer's Plain Concise Statement Why Relief Requested Should Not be Granted
8. Employer's Witness and Exhibit List
9. Employee's Notice of Filing Exhibit/Witness List
10. Employee's Response to Employer's Plain and Concise Statement
11. Order Granting Extension of Deadline
12. Motion to Exclude Testimony on the issue of Medical Causation by Dr. Sidrys
13. Order Continuing Expedited Hearing
14. Employee's Response to Employer's Motion to Exclude Testimony of Dr. Sidrys with Respect to his Causation Opinion

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent on January 19, 2024.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Stephan Karr, Employee's Attorney | | | X | steve@flexerlaw.com cindy@flexerlaw.com meredith@flexerlaw.com |
| Richard Lane Moore, Employer's Attorney | | | X | lane@moorerader.com jenna@moorerader.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*